IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID ALLEN LEHRMAN, DG-8595, )
   Petitioner,       )
             )
    v.        )   Civil Action No. 06-850
             )
JOSEPH J. PIAZZA, et al.,   )
   Respondents.     )

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the petition of David Allen Lehrman for a writ of

habeas corpus be dismissed, and that a certificate of appealability be denied for lack of a viable

federal constitutional claim.

II. Report:

David Allen Lehrman, an inmate at the State Correctional Institution at Coal Township

has presented a petition for a writ of habeas corpus. Lehrman is presently serving a life plus eleven

to twenty-two year consecutive sentence imposed following his conviction, by a jury of second

degree murder, robbery, conspiracy and abuse of a corpse at Nos. 199606454 and CC 199607040

in the Court of Common Pleas of Allegheny County, Pennsylvania [1]. This sentence was imposed

on June 23, 1997.[2]

---

[1] The petitioner was originally sentenced to life with a consecutive twenty-one to forty-two year sentence but that sentence was modified to the present sentence on December 12, 2003. See: Exhibit 33 to the answer of the Commonwealth.

[2] See: Petition at ¶¶ 1-6.

An appeal was taken to the Superior Court in which the issues were:

I. Police interrogation violated appellant's Fifth and Sixth Amendment right to counsel and it was error not to suppress statements.

II. The Commonwealth violated <u>Brady v. Maryland</u> and thus violated appellant's due process rights and therefore appellant is entitled to a new trial as the evidence was material to the defense.

III. Trial court erred by sitting at suppression court, in the middle of the ongoing jury trial, and not granting a mistrial.[3]

The judgment of conviction was affirmed on August 10, 2001.[4]  Leave to appeal to the

Pennsylvania Supreme Court was not sought.

A pro se post-conviction petition was filed on or about March 5, 2002.[5] On December 12,

2003, the court vacated the prior sentence and imposed a life with a consecutive eleven to twenty-

two year period of imprisonment.[6]  A pro se appeal was taken to the Superior Court in which the

issues raised were:

1. Whether the lower PCRA court erred in failing to file an opinion reflecting independent consideration of trial counsel's numerous instances of ineffective assistance of counsel?

2. Whether appellant's Fifth, Sixth and Fourteenth United States Constitutional Amendment rights were violated by trial counsel's many instances of ineffective assistance of counsel namely, (A) for failure in not requesting trial court to suppress evidence seized by police absent probable cause to execute a search warrant; (B) not preparing for trial, and (C) not moving for a mistrial due to Commonwealth's non-compliance/failure in not turning over exculpatory evidence until second to last day of trial?

_____

[3] See: Exhibit 23 to the answer of the Commonwealth.

[4] See: Exhibit 25 to the answer of the Commonwealth.

[5] See: Exhibit 26 to the answer of the Commonwealth.

[6] See: Exhibit 33 to the answer of the Commonwealth.

2

3. Whether at trial the Commonwealth knowingly withheld evidence in violation of <u>Brady</u>?

4. Whether at trial the Commonwealth knowingly used fabricated evidence and perjured testimony?

5. Whether the trial court committed trial error for failure in not granting suppression of appellant's illegal arrest and all fruits seized as a result thereof?

6. Whether the trial court committed reversible error for arguing suppression hearing while jury impaneled/in the presence of the jury?

7. Whether appellant's statement was taken by police in violation of <u>Miranda</u>?

8. Whether appellant's appellate counsel rendered ineffective assistance of counsel for failure in not: (A) filing a complete/comprehensive (Pa.R.A.P. 1925(b)) statement: (B) not raising the many instances of trial counsel's ineffective assistance of counsel during direct appeal, and (C) not filing an allowance of appeal with the Pennsylvania Supreme Court on appellant's behalf?[7]

On May 5, 2005, the denial of post-conviction relief was affirmed, and the petitioner's application for reargument was denied on July 7, 2005.[8]

Lehrman filed a pro se application for allowance of appeal to the Pennsylvania Supreme Court in which he raised these same issues.[9] On April 3, 2006, leave to appeal was denied by the Pennsylvania Supreme Court.[10]

On June 21, 2006, the instant petition was executed in which Lehrman alleges he is entitled to relief on the following grounds:

1. Whether, police interrogation violated petitioner's Fifth and Sixth Amendment

---

[7] See: Exhibit 38 to the answer of the Commonwealth.

[8] See: Exhibits 43 and 45 to the answer of the Commonwealth.

[9] See: Exhibit 47 to the answer of the Commonwealth.

[10] See: Exhibit 48 of the answer of the Commonwealth.

3

rights to counsel.

2. Whether petitioner's statement was taken by police in violation of <u>Miranda</u>.

3. Whether the Commonwealth violated <u>Brady v. Maryland</u>, by withholding evidence.

4. Whether at trial the Commonwealth knowingly used fabricated evidence and perjured testimony.

5. Whether the trial court erred in not granting suppression of petitioner's illegal arrest and all fruits seized as a result thereof.

6. Whether the trial court committed reversible error for arguing suppression hearing in the presence of the jury.

7. Whether trial counsel was ineffective in the following respects: (a) failing to seek suppression of evidence seized pursuant to an invalid search warrant; (b) failing to prepare for trial and (c) failing to seek a mistrial when the Commonwealth did not turn over exculpatory evidence in a timely fashion.

8. Whether petitioner's appellate counsel rendered ineffective assistance of counsel for failure in not: (a) filing a complete/comprehensive Pa.R.A.P. 1925b statement; (b) not raising the many instances of trial counsel's ineffectiveness during direct appeal, and (c) not filing an allowance of appeal with the Pennsylvania Supreme Court on petitioner's behalf.

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973); <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484 (1973); <u>Doctor v.</u>

4

Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's

5

decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in <u>Williams v. Taylor</u> made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, the Commonwealth concedes that the petitioner has exhausted the available state court remedies and that his petition here is timely.[11] However, the Commonwealth also argues that several issues which the petitioner seeks to raise here have been determined to have been procedurally defaulted.

A brief recitation of the factual background, omitting the gruesome details was set forth in the August 10, 2001 Memorandum of the Superior Court on direct appeal:

> In investigating the murder of Brian Merenna, police developed leads which pointed to appellant.

> > The police ... sought to arrest [appellant]. Defendant was transported to the City Homicide Office from the Allegheny County Jail where he was being held on other charges. As the detectives prepared to transport defendant from their office to the coroner's office defendant blurted out to the detectives, "Hold up man. I just shot [the victim] in the foot and that didn't kill him; the head shot [by another actor] did." Defendant was then provided with his <u>Miranda</u> Rights, and gave a lengthy statement to City of Pittsburgh Detective Dennis Logan. He ultimately signed the notes taken by Detective Logan, which contained the contents of his statement to the detectives.[12]

The issues which the petitioner seeks to raise here concerning alleged pretrial

---

[11] See: Answer of the Commonwealth at pp. 20 and 24.

[12] See: Exhibit 25 to the answer of the Commonwealth at pp. 1-2.

improprieties involve, police interrogation allegedly in violation of the petitioner's Fifth and Sixth Amendment rights (1st issue); whether petitioner's statements were taken in violation of Miranda (2nd issue); whether the trial court erred in not suppressing items secured during the petitioner's allegedly illegal arrest (5th issue)  and whether the trial court erred in conducting the suppression hearing in the presence of the jury (6th issue). The next issues raised are that the Commonwealth violated the holding in Brady v. Maryland, by withholding exculpatory evidence (3rd issue) and whether the Commonwealth knowingly introduced fabricated and perjured testimony (4th issue). Finally the petitioner argues that trial and appellate counsel were ineffective (7th and 8th issues).

The transcript of the suppression hearing which commenced on April 14, 1997, reveals that on April 30, 1996, the petitioner volunteered that he had shot the victim in the foot (TT. 7,22,27,60,70,84); that his statement was immediately interrupted and he was advised of his Miranda rights (TT. 7-9,27,60,70); that the petitioner completed the advice of rights form (TT.61,71); that the petitioner was very talkative (TT.12, 29); that no threats or promises were made to him (TT. 12,31); that the petitioner reviewed the officer's notes of the interview and signed them (TT.13-14,64); that he did not request counsel (TT.23, 50,112) and that the search of the home which petitioner shared with his girlfriend was made with her consent (TT.150,158).

At the suppression hearing, the petitioner testified that he told the police he was not involved in the homicide (TT.204-206); that he asked to call his attorney (TT.207,216,222,224); that he was with the police for seven to eight hours (TT.214); that he was not informed of his rights although he did sign an acknowledgment of rights form (TT.224,225); that he was assured that he would not be charged with the homicide if he cooperated with the police (TT.226,227,231,240,276); that he was offered food but declined (TT.236,263,267); that he did

not confess (TT.237-238, 269); that he did sign the police report of his interview (TT.240,242) and that he made repeated requests to call counsel (TT.254).

Following the hearing, the trial court concluded that as the petitioner was already in custody on other charges; that the arrest without a warrant on the homicide charge was not illegal (TT.279), and that the suppression issue was one of credibility (TT.290) and "there is really no indication ... that there is coercion and duress during this particular time or that the statements are [involuntary] ... (TT.291,304).

Accepting the presumption of correctness accorded to the factual findings of the state court, 28 U.S.C. 2254(d), and applying the applicable law as set forth in <u>Miranda v. Arizona</u>, 384 U.S. 436 (1981) and its progeny, it appears that the correct legal standards as enunciated by the Supreme Court were followed and that no bases for granting relief on these claims exist. Thus the petitioners 1st and 2nd claims are meritless.

In reviewing several issues raised in his post-conviction petition regarding: whether or not a <u>Brady</u> violation occurred; whether the Commonwealth knowingly used fabricated evidence and whether the trial court erred in failing to suppression evidence gained from petitioner's illegal arrest, the Superior Court held that these issues should have been raised in petitioner's direct appeal, and that because this was not done, they were procedurally waived.[13]

In <u>Coleman v. Thompson</u>, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental

---

[13] See: Exhibit 43 to the answer of the Commonwealth.

miscarriage of justice.

Because there were available state court remedies which the petitioner did not pursue, he has procedurally defaulted these claims in the state courts and petitioner's 3rd, 4th and 5th issues need not be considered here.

The petitioner's 6th issue is that the trial court committed error by conducting the suppression hearing in the presence of the jury. The trial record demonstrates that on April 14, 1997, after the jury had been selected, but outside the presence of the jury, the suppression hearing commenced.  After the court  denied the suppression motion, and during the course of the trial, the court determined to reopen the suppression hearing with it considering evidence then being presented to the jury as that evidence bore on the suppression issue. The court also indicated that if it concluded that suppression was warranted, it would then grant a mistrial (Vol.3 TT. 154-176). Thus, while a small portion of the suppression hearing was conducted in the presence of the jury it was done in the context of facts produced before the jury also being considered for determining the suppression issue, and no prejudice to the petitioner occurred. Thus, his 6th issue is meritless.

The final issues which the petitioner seeks to raise here, issue 7 concerns the adequacy of trial counsel and issue 8 concerns the adequacy of appellate counsel.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000).  Second, under Strickland, the

defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987).  As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted);  Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

In his 7th issue, the petitioner contends that trial counsel was ineffective for failing to move to suppress evidence seized pursuant to an invalid search warrant; for failing to prepare for trial and for failing to seek a mistrial when the Commonwealth failed to turn over exculpatory evidence.

The search warrant in question was issue for the premises at 22 Merritt St. where the victim was last seen. In applying for that warrant, the affiant stated:

As a result of the body being found Detective has been able to verify that the

10

[prior] information [that the victim had been shot at the Merritt St. address] is true and correct. Specifically affiants have received information from a source who was able to provide information as to the injuries to the victim, disposition of the body and persons responsible for the murder. Much of this information has now been verified with the discovery of the victim's body. This information also gave information as to who was at the party, type of weapon used, and how the body was disposed of. All this information has been verified through investigations as a result of an autopsy on the remains of the victim's body... Based on this information affiants request a search warrant for 22 Merritt St. the scene of the crime for the purpose of recovering any fruits of the crime, evidence of the crime and weapons used in the crime.[14]

Clearly under the totality of the circumstances, probable cause existed for the issuance of the search warrant and counsel cannot be deemed inadequate for failing to secure the suppression of the items seized. Illinois v. Gates, 462 U.S. 213 (1983).

The petitioner also contends that counsel was inadequate for failing to prepare for trial and as a result failed to secure evidence which would have demonstrated the petitioner's innocence.

In reviewing this issue, the Superior Court stated:

Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengable; strategic choices made following a less that complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. As noted, an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. **Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it...**

[Petitioner] does not allege that he told trial counsel of certain mitigating evidence, which trial counsel then failed to unearth and present in [petitioner's]

---

[14] See: Exhibit 49 to the answer of the Commonwealth.

defense.  Accordingly, we find no merit to [petitioner's] second ... claim.[15]

This conclusion, based on the record before the court clearly demonstrates that the court did not misapply the applicable federal standard as enunciated by the Supreme Court, and does not provide a basis for relief here.

Petitioner also alleges that counsel was inadequate for failing to move for a mistrial when untimely  "exculpatory" evidence involving a police report of an interview of a co-defendant was produced during trial. Petitioner contends that the report demonstrates that it is dated at the same time the petitioner was being interviewed by the officers, and that this conflict should have been introduced to challenge the credibility of the officers' testimony.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Court held that "suppression by the prosecutor of evidence favorable to accused ... violated due process where the evidence is *material* to guilt or to punishment "(emphasis added). Here, the dispute in the time of the co-defendant's interview was considered by the Superior Court which wrote,

> even if this was true, given the nature of this evidence, there is not a reasonable probability that had the undisclosed evidence been disclosed to the defense pre-trial, the result of the proceeding would have been different.[16]

This conclusion, by the Superior Court clearly does not reach a conclusion contrary to the rulings of the Supreme Court and for this reason, this issue likewise does not provide a basis for relief.

Finally, in his 8th issue,  petitioner contends that appellate counsel was inadequate in failing to file a comprehensive Pa.R.App.P. 1925(b) statement; not raising the issue of ineffectiveness of

---

[15] See: Exhibit 43 to the answer of the Commonwealth at p.6 (emphasis in original).

[16] Id. at pp.7-8.

trial counsel, and not seeking leave to appeal to the Pennsylvania Supreme Court.

Pa.R.App.P. 1925(b), requires an appellant to serve the trial judge with a concise statement of issues raised on appeal so that he/she may prepare an appropriate response. As a matter of state procedural law, the resolution of any such issue is not a matter for consideration by the federal courts. Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir.1997). Here, when reviewed the matter the Superior Court concluded that this issue was meritless.[17] Thus, this issue is not properly before this Court.

The petitioner also contends that appellate counsel was inadequate in failing to raise the issue of inadequacy of trial counsel. We have previously addressed the alleged ineffective assistance of trial counsel claim and found it lacking. Counsel, appellate or trial,  cannot be deemed ineffective for failing to raise a non-issue. Lilly v. Gilmore, 988 F.2d 783 (7th Cir.), cert. denied 510 U.S. 852 (1993).

Finally, the petitioner contends that appellate counsel was deficient in not seeking leave to appeal to the Pennsylvania Supreme Court. In reviewing this issue, the Superior Court observed that the record is devoid of any demonstration that the petitioner requested his counsel to seek that relief.[18] Accordingly, the petitioner's claim of inadequacy of appellate counsel is likewise lacking in merit.

Because the record makes abundantly clear that the state courts did not misapply federal law as defined by the Supreme Court, the petition of David Allen Lehrman is without merit. Accordingly, it is recommended that it be dismissed and that a certificate of appealability be

---

[17] Id. at p.9.

[18] Id. at p.10.

denied.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,

Entered: August 24, 2006                         United States Magistrate Judge

14